Phoenix. May it please the court. My name is Crystal Lanham. I'm an assistant United States attorney from here in Phoenix, and I represent the United States in this appeal. I'd like to reserve four minutes for rebuttal, and I'll try to watch the clock. Both the Take Care Clause of the Constitution and 28 U.S.C. Section 547 vest in the executive branch the power to determine when and how to prosecute. Those provisions give the executive what other courts have called seemingly exclusive discretion to determine who prosecutes a given case. That's why every circuit court to consider the disqualification of an entire U.S. attorney's office has reversed, whether it case law. The court has set out two criteria for evaluating a district court's exercise of supervisory authority that impinges on the executive branch. First, movements, the defendants here must show that the court needs to use its power to stop the executive from violating a known statutory procedural or constitutional right. And second, the district court must provide a clear basis in fact and law for the exercise of that authority. Neither condition is satisfied here. The defendant's oral motion to disqualify the USAO set forth no constitutional procedural or statutory right that would be infringed if firewalled Arizona AUSAs represented the government in this action. So counsel, we're only talking about one motion, right? We're talking about two motions, your motions, but not the entire action. That's correct. And I would note two things about that, your honor. It doesn't matter. It is the executive's power to choose who prosecutes, whether it is a portion of a case or the entire case. And two cases really support that proposition. First of all, the Bolden case out of the 10th circuit, where the government was disqualified as to litigating a single post-conviction motion. And the 10th circuit in that case held that that was an illegal disqualification. It violated the separation of powers and it reversed. Second is this court's decision in the Jennings case, which looks at a district court's of supervisory authority in telling the government which AUSA had to do a Henthorne review. So that Giglio review of law enforcement records. The government had set up a procedure whereby agency counsel was going to be the first line of defense, essentially the first line of investigation into those law enforcement records, and then inform the United States Attorney's So the district court's order that a named AUSA in the case actually personally conduct the Henthorne review, this court held was a violation of its supervisory authority because the movements in that case could not name an exercise of, could not name a violation of statutory procedural or constitutional law that was being addressed by the district court's of supervisory authority. And without that, it is simply an illegal exercise of supervisory authority. I'd like to also get to the second requirement though, which is that the district court must set forth a clear basis in fact and law for its decision. The magistrate judge here was facing an oral motion to disqualify the U.S. Attorney's office. And he granted it at the same at which the movements made it. Something that the government believed was set as a status conference. And so understandably, the magistrate judge didn't realize that the supervisory authority was implicated or that the separation of powers principles were really implicated at all because the government wasn't afforded the opportunity to give briefing. So the reasons that the magistrate gave for disqualifying the U.S. Attorney's office, namely that it was possible that the AUSA as to whom misconduct was alleged might have to testify or possible that the U.S. Attorney had potentially approved the indictments or that it looks like an internal investigation, this court has rejected each of those reasons. Could you describe exactly what the alleged misconduct is here? Because it does seem like an extreme remedy to something that seems like it happens. It shouldn't happen all the time, but it happens. Well, so yes, Your Honor. And I'll answer your question first. I believe what the defendant's motion is asking for is a sealed hearing. That was what they initially requested. Based on the theory that one member of their joint defense agreement may have shared confidential information with the prosecutor. And I take from their motion, which is a little bit vague, the idea that the prosecutor was under some duty to inform the court. Let me ask about that. Does the prosecutor have a duty to inform the court or the other defendants in this case? It is possible that the prosecutor would have such a duty. But as the magistrate judge actually noted here, and this is at 3 ER 220, prosecutorial misconduct hadn't even actually been alleged there. And the U.S. Attorney's Office voluntarily firewalled that AUSA. So whether or not he committed misconduct, and we maintain that he didn't commit misconduct based on what we can see. But that question is really a part and separate. Can I understand like the sequence here? Because you said that there was a status conference. Had that particular U.S. Attorney, and you had no notice, but had the U.S. Attorney already been firewalled? So no, Your Honor. At that status conference, that particular AUSA had not yet been firewalled. So was he present at this desk? He was, Your Honor. And it's for the reason that you noted. We didn't know what the hearing was about. But if you read the government's motion for reconsideration before the district court, that explains that by the time the motion for reconsideration had been filed, that AUSA had been firewalled. So the motions were being litigated by a firewall team. I can tell the court, as I did in my declaration, that I am part of the firewall team. I am not a part of the prosecution team in the case. And Arizona USAO has set up an entirely separate supervisory chain even for the firewalled AUSA. Is there any evidence, any allegation that this misconduct attributed to this one AUSA is widespread in the U.S. Attorney's Office? No. Did you braze that to the magistrate judge? And what was the response? So, yes. But this caught the government by a little bit of surprise. So the prosecutor at the hearing, who was the firewalled AUSA, said, you know, this is all premature. There hasn't been an allegation of, there hasn't been an allegation even of prosecutorial misconduct yet. And he also said that the things that the defendants were alleging that kind of get to that question of whether there was office misconduct are actually easily explainable by the usual procedures of the U.S. Attorney's Office for Arizona, which is another reason why it doesn't make any sense to call in another U.S. Attorney's Office to have to get up to speed and internal investigation and understand the way that things work in Arizona when we have firewalled AUSAs who can do exactly that. So I'll confess, as I read through this briefing, I had my district court hat on. And listening to some of the questioning today, I continue to be perplexed. I don't understand how this procedure in the court below snowballed in the way that it did. Can you comment? Your Honor, as I looked at the record, I don't understand why the procedure snowballed the way that it did either. And that gets back to the idea that there is no clear basis in fact and law for the district court's actions in this case, which means that it does violate the district court's supervisory authority and needs to be reversed and vacated. Do you want to reserve it? I can reserve the remainder for rebuttal. Thank you. May it please the court. My name is Richard Novak, and my co-counsel, Aaron Carrillo, and I both represent David Williams. He is one of the defendants below, and he's actually the lead defendant below, but we're actually here on behalf of all of the defendants in the case. The defendants who joined in the motions that the court was referring to and, of course, entered their appearances in this appeal. This may complicate it for the court, but we've divided up the presentation in this way. I'm going to address the jurisdictional questions because we are here on, purportedly, on interlocutory review in a criminal case. I'm also going to address the standard of review, which I think is very important here. If the court has questions about the very complicated status of the motions to seal, I'm going to address those, but I'm already down to four minutes, so I'm not going to address those unless the court has questions and gives me leave to address them. I want to address the two different potential sources of jurisdiction. One is the collateral order doctrine, and I think we all know that we look at Cohen, which is a United States Supreme Court case. In this district, I'm sorry, in this circuit, this court has already determined in United States v. Gregor that there is no collateral order doctrine jurisdiction when a district court disqualifies defense counsel in a criminal case. So the question here is whether Gregor should be extended to say that there is no jurisdiction where the district court disqualifies the government, but I want to be very careful about the word disqualification, because as Ms. Carrillo is going to explain when she addresses sort of the merits of the government's appeal, we don't see this as a disqualification. We see this as a very narrow, limited firewalling off of this U.S. attorney's office for one particular piece of a case. The lawyer whose conduct is at issue is actually preparing the case for trial, and the first trial in this case is actually set now for March. So there's no disqualification of the trial team from trying the case. Well, didn't you mention that one of the remedies here, if there is misconduct, is dismissal of the indictment or suppression? I think it is premature to try to figure out what are the remedies, because as this court noted, the motions which led to this appeal were motions for evidentiary development and an evidentiary hearing, which Magistrate Judge Markovich, who is, I think this court can take judicial notice, a former assistant United States attorney from Arizona, said we're going to have an evidentiary hearing, and at that evidentiary hearing, we will develop the facts. We have not sought any remedies at all at this point, Your Honor. We haven't sought. But it's obvious that's going to happen, so I just don't know why we should so narrowly construe this as, you know, one small motion, evidentiary motion. Because that's all it is, and because I don't know that even if, so let me just take the hypothetical, and I see my orange light, but I hope the court will bear with me, because I do want to get to the standard of review. It's very important, and briefly touch on the Bauman factors. But even if the district court or the magistrate judge, and then reviewed by the district court, conducts the evidentiary hearing with Mr. Casper, who is the District of Nevada Firewall Counsel, designated by the government, and the district court makes findings of misconduct, and those findings are on the record, I don't see why the trial team can't come in and address the sanctions proposal that Your Honor is, if I may, hypothesizing about. Because the real issue about this evidentiary hearing, as Ms. Carrillo is going to talk about, is the potential Sixth Amendment violation is all wrapped up with the violation of the privilege. So it's really the fact-finding process that we're trying to protect, and that the district court thinks needs to protect the privilege, which is separate from what I think Your Honor is asking, which is, who argues what the right remedy is? Is there prejudice? What's the balancing, if in fact there is misconduct? So what I just want to say about collateral order jurisdiction is that we know that in criminal cases, this court should very sparingly entertain interlocutory appeals, and that doctrine is limited in criminal cases. We've already got an eight-month delay in the first trial of this case, only because this interlocutory appeal was taken. We could have litigated these issues in the district court, and the first trial was actually set for October. The firewall order was entered on May 25th. So all of that delay is attributable to this interlocutory appeal. How many trials are scheduled? Three? There are four trial groups right now, Your Honor. We haven't gotten to Group 1. Group 1 was scheduled in October when we filed this motion in April. The thing I want to say about the Bauman factors, and then I'm going to move on to standard of review in my remaining 10 seconds. Hey, can you just go to the standard of review? I'm curious what you have to say about that. Okay, so you want me to skip over the... Yes, we're familiar. Totally fine. Okay, so there are two cases from this circuit which we think address the standard of review in this particular situation, which the law describes as disqualification. And the most recent description of that is Radcliffe v. Hernandez. That's Judge Tiger's opinion for the court in 2016, where he writes that an ordered disqualifying counsel will not be disturbed if the record reveals any sound basis for the court's action, and reversal is warranted only if the district court misperceives the rule of law or abuses its discretion. And then the other important language is in U.S. v. Fraga, F-R-E-G-A, which is a 1999 case, in which this court said that district judges have substantial latitude in deciding whether counsel must be disqualified. What about Bolden, the 10th Circuit case, where they said because it implicates such important constitutional principles that we should apply a more de novo or less deferential standard of review? Well, I think that this court can decide what is the rule of law and whether the facts here satisfy the rule of law. And I think that first part of that is the de novo review. We disagree with the government that Bolden controls here. Bolden is the first case cited in every pleading in this case by the government from the motion for reconsideration all the way up to the opposition to the motion to seal. And Bolden is a really different case, as Ms. Carrillo will address. So we think that the rule of law here, and then I'm going to sit down if I may, is a balancing of the separation of powers concerns with what we have made, which is a threshold showing of a Sixth Amendment violation. And that's the inquiry into that Sixth Amendment violation is necessarily wrapped up in the privileged information that the defense attorney who engaged in this bizarre course of dual representation with the government's knowledge for many months, it's all wrapped up in the disclosures or the potential disclosures of that privilege. So you can't get to the Sixth Amendment violation without addressing in an evidentiary hearing the privileged information. And I think that I've exceeded my time. I think you have. And I will sit down. All right, thank you, counsel. Thank you. Good morning, your honors. My name is Erin Carrillo. I'm going to kind of take up from where Mr. Novak just left off. Our position is that Judge Markovich, Magistrate Judge Markovich, his order properly balanced the government's separation of powers concerns against the court's obligation to ensure that the defendant's constitutional rights and privileged communications are protected. Where in this case, the defendants made a threshold showing to Judge Markovich that misconduct had occurred, a Messiah violation that implicates the defendant's right to counsel. The government in their argument indicated that Judge Markovich granted this oral motion and didn't realize there were separation of powers concerns. That's not true. This argument that occurred on May 25th of this year, it was two hours. Judge Markovich had the pleadings, had the papers in front of him for a month before he held this status conference. At the status conference, it was a two-hour conference where he heard, and let me back up, before the status conference, he had received transcripts of this. Counsel, the Magistrate Judge compared the U.S. Attorney's Office to internal investigation of a company, right? I mean, that clearly is a lack of understanding of separation of powers. If you're comparing the government, you know, a co-equal branch of government to a private entity and an internal investigation. He made a statement about that. That is true, Your Honor, but I don't... You would agree that that's just a wrong analogy. I don't believe that that's actually... I don't believe that that was the rule of law that he applied, if you will. I think what he mentioned was, and let me find that for you, but he indicated that this was like a case where a company had been accused of misconduct, right? And most of the cases... Let me go here. Most of the cases that the government relies upon here to indicate that Judge Markovich, you know, didn't apply the correct rule of law, those cases aren't our case. Those cases deal with conflicts of interest, right? That whole idea of, isn't this like a company where we have a conflict of interest in bringing in outside counsel? Judge Markovich's... Or what Judge Markovich actually said was, this is a case of misconduct, not a conflict of interest case. The cases that the government relies upon are largely conflict of interest cases, which are treated differently than cases where it is alleged that misconduct on behalf of the United States... So, excuse me, that's true. There is misconduct alleged against 1A USA. I just don't see how you get to that, to accusing the entire office. Is there any allegation that the entire office is tainted? Well, let me start here. That's a great question. Try to answer it first. So, this case, where it stands today is on its third superseding indictment. It is the only RICO case that the District of Arizona has ever prosecuted. This case, when it was brought in 2018, had to go up the supervisory chain of command. Everybody knows that. That's in the record. It's been alleged. It has never been disputed. So, it went up to the supervisory chain of command in 2018. We had our first superseding indictment a couple years later, a second superseding indictment, and a third superseding indictment, which came down in April of this year. If I may, just let me let the court know this. Judge Markovich, at the May 25th hearing, ordered that the government produce some discovery related to the allegations that were brought in the motion. And since then, the government has provided some discovery. I would like, and it's not, I'm just going to be frank, it's not in the record before the court. However, what we have learned is that in April, when the government got the third superseding indictment, this new cooperator was supposed to have testified at that grand jury presentation. We don't know if that happened, but the United States Attorney's Office was involved in the decision making as to whether or not this new cooperator, we'll call him Mr. R, whether or not he was even going to be offered a cooperation agreement. But counsel, I'm sorry to cut you off, but it just sounds like you're agreeing that there's no allegation that this misconduct from one USA spread to the entire office. I can't agree with that right now, Your Honor, only because we don't know how deep it has spread. We know that- Can you agree that there's nothing in the record that would support disqualifying the entire 180 lawyers? Realizing you don't know everything. There's nothing you can point to in the record, is there? Or if there is, please do. But that supports disqualifying- The entire office. I disagree with that analysis, and here's why. I don't believe that the case law requires the court to find misconduct on behalf of every single attorney in the United States Attorney's Office in order to disqualify their office. Don't they have to find something that's so pervasive that would justify- And again, Your Honor, let me- This is a- Yes or no. Yes, if it were a recusal, if it was a total disqualification order, right? But that's not what we have here. We have the court removing the United States Attorney's Office from litigating, excuse me, I'm sorry, from litigating to a discovery hearing so that to protect these interests. The court very clearly stated at this evidentiary- Judge Kelso, I just, you know, I'm not downplaying the seriousness of the allegation here, but you see these types of prosecutor misconduct claims all the time. I just, what is distinguishing about this particular case, you know, from the run, I hate to say run the mill, but the Brady violation, what, I mean, could the court have done the same thing, the magistrate judge had done the same thing if there's an allegation of a Brady violation? Perhaps, I mean- So it sounds like there's just no limiting principle. Well, I guess I'm not understanding the court's question, I apologize. I guess to me, this seems like an extraordinary remedy. You would agree with that, disqualifying an entire U.S. Attorney's Office? I don't, Your Honor, and the reason that I don't is because it's, this order is narrow in scope and narrow in time. And this case, like I said, is different from even the Bolden case. Counsel, let me just, let me ask, it seems to me this disqualification of the entire office was premature because you, but what the judge was talking about, he had a fear that, or a concern that if you went forward with the evidentiary hearing, it would begin to come up with evidence that might implicate the chain of command at the U.S. Attorney's Office. So, and I agree, it doesn't have to be every individual member of the Attorney's Office, if it is the chain of command up to the U.S. Attorney who decided that we're going to use this stuff and bring a third superseding indictment, maybe that would require disqualification of the entire office. But we're not there yet. All we have, all Judge Markowitz and District Court Judge Soto had was like an allegation and a request for the discovery and the, so that he made no findings that there were facts or that in fact, the U.S. Attorney was aware of this, was aware of the talks between the cooperating witness and the prosecuting attorney, or that even that the prosecuting attorney had utilized that material. There's just no evidence on this record if that evidence comes out, can't at a hearing, can't Judge Markowitz at that point to say, okay, now there's a basis or now we have clear facts that show that, you know, the whole people in charge of this prosecution were aware of this and it should have been reported. And, you know, this is tainting the entire prosecution, which, you know, I think Judge Bumate is right. If that, those facts came out and they were true, it'd be a real problem. So Judge Markowitz has already determined that an evidentiary hearing will be held. He's already determined that. He's determined that that evidentiary hearing will include testimony from this particular United States Attorney. Right, one U.S. Attorney. Perhaps others, right? Okay, that's the part I'm getting to, like if this U.S. Attorney doesn't say anything that implicates anybody else in the U.S. Attorney's office, then there is no other person that's going to have to testify. There's also, the former defense counsel will also testify at this evidentiary hearing, who's a member of the joint defense agreement. As Mr. Novak said, in order to litigate, to find out whether or not we do have a Sixth Amendment issue, and let me go ahead and just state this, and I know my time is up as well, but the issue here isn't just limited to whether misconduct occurred, right? It's how deep did that misconduct run into the United States Attorney's office, which is what the court's concern. That's pretty delicate. I think that requires a very delicate handling, not a, you know, off with their heads handling. I would agree. And I'm not really understanding that question or comment either, but I do believe that, I guess, our position here, Your Honors, is that the judge did handle this delicately. He balanced the interest of the parties. And I know that the court has the excerpts of record. In 3 ER 183, Judge Markovich states, look, there's no secret that one of his concerns was the confidential communications that would be revealed as a result of this hearing. Here's a sample of how he was concerned of the government's interests. How am I going to resolve an issue in a report and recommendation when half of it is a secret to the government? He's not, Judge Markovich is very well aware of the government's interests, and he's protecting them. Unlike one of the cases, I think it's Vlahos that the government cites, where that district court ordered certain counsel to represent the government, he had, he allows- Why is the answer just a firewalled AUSA? The firewalled AUSA that appeared at the May 25th hearing, and thank you for asking that question. He was not firewalled when he appeared at that hearing. He was sitting there with the prosecutor who's alleged to have committed this misconduct. At some point in, and he makes it very clear at that hearing, and I can direct the court to those excerpts of the record as well. This is the hearing that was scheduled as a status conference? It was status- So he had no prior knowledge of the agenda there? Well, I- Well, is there anything in the record that would tell me that he did? No, Your Honor. Thank you. But, and I don't know if I answered Judge Boutimey, your question, but I think my time is up. So if you have any other questions for me, I- Thank you again. Ms. Lanham? You've been taking a lot of notes. I've been planning, Your Honor. I'd like to address four points, and the first one will be really quick. That's the jurisdictional point that Mr. Novak was making. Every circuit court to have considered this has held that collateral order doctrine applies because disqualifying the United States Attorney's Office is not like a defense side disqualification or a disqualification in a civil case. And that's because the government simply can't go out and find another U.S. Attorney's Office to fulfill the U.S. Attorney's statutory duty to prosecute for all offenses in the district. But your opponent minimizes that and says it's only for two motions. It's not for the entire case. And I would again point to Bolden and Jennings as the reason why that really doesn't matter. But even if you hold that mandamus jurisdiction  collateral order jurisdiction, this court's decision in Cole makes very clear that mandamus jurisdiction is another available remedy even for defense side disqualifications when it meets the mandamus factors. And we have a much stronger case than Cole here because we met the first factor by moving for reconsideration before the district court, and we meet the fifth factor by presenting it to a first impression before the circuit. So moving on to the standard of review, I believe that Bolden and Whitaker had that right. I think that Jennings supports it in looking at this kind of two-step. Was there any basis for the district court's order at all and looking at that de novo? But it truly doesn't matter because even under abusive discretion review and the cases that Mr. Novak stood up here and talked about, Hernandez said that when the district court misperceives the relevant rule of law, and I'm quoting, that is an abusive discretion. And here, as Judge Wardlaw noted, there was no evidence that the district court or the magistrate judge had any idea that the separation of powers was implicated. As to Ms. Carrillo's point on that, the government had not filed a response to the motion for sealed hearing by the time of the status conference. So the separation of powers problems that she is talking about in those two motions, their motion was before the magistrate judge, but the United States had not filed any kind of response. Counsel, help me understand how this would proceed absent the disqualification of the whole office. So am I right? You could start the hearing and then maybe you'd start with one firewall, and you would say you might end up, next day there's two, next day there's three, maybe then it starts implicating the U.S. attorney made decisions involving this information that I actually don't. It says the substantive law of this hasn't been briefed and I'm not really quite sure I understand that I can see why the prosecutor has an obligation to say, hey, we're in talks and we need to let other people know maybe not operate based on that information. But then what happens? I mean, what if the U.S. attorney has to be firewalled at that point? So that might be appropriate at that point. But as your honor noted, this is completely premature. And the Lorenzo case in which the U.S. attorney was a victim in the case, this was out of the district of Hawaii. So an appeal to this court, that U.S. attorney testified at trial. And the entire office was not disqualified and this court upheld that order. So I can test the premise that even going up the entire supervisory chain as high as the U.S. attorney, which hasn't been alleged, would support disqualifying the entire office here. Lorenzo squarely holds that that's just not the case. In terms of, I think your honor had a question about the practicalities of this also. The defendant's own cases point out how this actually proceeds from a practical standpoint. They cite Stepney, they cite Austin, they cite Gonzalez. Austin and Gonzalez are cases from this court. They can litigate the joint defense agreement issues ex parte. And then the district court issues an order that doesn't include any privileged information. At 3 ER 208, the defendants actually recognized that they could go ahead and litigate that whole side of it ex parte. Then you bring in the government, you bring in firewall counsel to actually question the AUSA against whom misconduct is alleged and any other AUSAs against whom there is actually a threshold showing of misconduct. But if this court were to hold, as I think Judge Bumate was getting to, that defendants could disqualify validly the entire U.S. attorney's office merely by alleging prosecutorial misconduct and defense side privileged materials, there would be pandemonium. Any defendant could make that showing and disqualify the government. And that simply isn't consistent with the separation of powers. And there was no clear basis in fact in law for this order. So we ask that you reverse and vacate. All right, thank you, counsel. U.S. versus Williams is submitted.
judges: WARDLAW, BUMATAY, Zouhary